## JOSEPH SCHNEIBLE CO. v. EBLING BREWING CO.

### (Circuit Court, S. D. New York. January 12, 1910.)

1. PATENTS (§ 328*)—INFRINGEMENT—APPARATUS FOR CHARGING LIQUIDS WITH CARBONIC ACID GAS.

The Theurer patent No. 505,240, for apparatus for charging liquids with carbonic acid gas, claim 3, in view of the prior art, discloses invention. Also *held* infringed.

2. PATENTS (§ 289*)—SUIT FOR INFRINGEMENT—LACHES.

Where a corporation commenced suit for infringement of a patent at once on becoming its owner, the fact that its president had been in effect the owner for four years, with knowledge that defendant was making and selling the alleged infringing articles, did not constitute such laches as to debar complainant from relief.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 468; Dec. Dig. § 289.*]

3. PATENTS (§ 289*)—SUIT FOR INFRINGEMENT—LACHES.

Delay in the prosecution of a suit for infringement of a patent after it has been commenced, with the acquiescence of defendant, will not be considered laches such as to defeat a recovery.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 468; Dec. Dig. § 289.*

Laches as a defense in patent infringement suits, see notes to Taylor v. Sawyer Spindle Co., 22 C. C. A. 211; Richardson v. D. M. Osborne & Co., 36 C. C. A. 613.]

Suit in equity by the Joseph Schneible Company against the Ebling Brewing Company. Decree for complainant.

In Equity. Suit to restrain alleged infringement of United States letters patent and for an accounting.

Redding, Greeley & Austin (W. H. Dyrenforth, William B. Greeley, and William A. Redding, of counsel), for complainant.

Straley & Hasbrouck (Edgar Bull, C. A. Dieterich, and John A. Straley, of counsel), for defendant.

RAY, District Judge. The patent in suit, No. 505,240, was granted to the Universal Carbonating Company of Newark, N. J., assignee of Jacob F. Theurer, inventor, September 19, 1893, on application filed June 30, 1893, for "apparatus for charging liquids with carbonic acid gas." This is not a pioneer invention. The patent has four claims, only one of which, claim 3, is in issue. That claim reads as follows:

"In combination with a stationary charging vessel and a fluid supply valve, of an external movable regulating vessel in communication with the top and bottom of the charging vessel for receiving fluid, and operated by variations in the liquid level, and an operative connection between said regulating vessel and the fluid supply valve, substantially as described."

Contention has arisen over the words "fluid supply valve," whether they refer to the gas supply valve of the apparatus or to the other liquid supply valve, or to both. The apparatus is designed to charge liquids with carbonic acid gas, and, says the patent:

"My invention consists in a new and improved carbonic acid charger to be used principally for the impregnation of beer and other malt liquors in connection with the method and apparatus referred to in United States letters

---

patent No. 478,176, dated July 5, 1892, granted to John B. Stobaeus and Frederick C. Wackenhuth."

The elements of claim 3 are: (1) The stationary charging vessel; (2) a fluid supply valve; (3) the external movable regulating vessel having (a) communication with the top and bottom of the charging vessel for receiving fluid, and (b) which movable regulating vessel is operated by variations in the liquid level; and (4) an operative connection between the movable regulating vessel and such fluid supply valve.

Claim 4 may throw some light on the meaning of claim 3, which is obscure, as both beer, malt liquors, and carbonic acid gas are fluids, and the charging vessel receives both through separate conduits, each having a supply valve. Claim 4 has in combination (1) the stationary charging vessel; (2) a liquid supply pipe (evidently referring to the beer or other liquid to be carbonized); (3) a gas supply pipe; (4) the external regulating vessel with the same communications and same means of operation, viz., the variations in the liquid level; (5) means for adjusting the regulating vessel; and (6) an operative communication between the regulating vessel and the gas supply valve. It can hardly be contended that claims 3 and 4 are the same, or intended to be. To charge beer or other liquids with carbonic acid gas the mode of operation described in the patent is this: The charging vessel, through a conduit or pipe at the bottom is filled with water driving out the air at the top, and as this water is drawn off the vessel and connections are filled with gas through the gas supply pipe, the valve being open; beer is now admitted at the top of the vessel and passes through a perforated plate, having many perforations, so that the beer falls through the space filled with gas in drops and absorbs gas, and is allowed to accumulate to any desired depth. By suitable means, a regulating vessel, V, having free communication by means of a flexible pipe with the beer in vessel A, and also free communication by means of another flexible pipe with the gas supply admitted to A at its top, is attached to A movably, and moves up or down as the beer supply or accumulation in A is increased or diminished. This vessel, V, is set in the first instance at a certain point fixing the distance through which the beer is to fall as it absorbs the gas. There is a bar attached to V at one end having a weight at the other, guided by and movable on a rod or standard extending from the top to the bottom of A, but on its exterior. In drawing off the charged beer the flow thereof is liable to interruption, or it may not be uniform, in which case some thereof, on account of the difference in height of the gas space, will become more highly charged with gas or less highly charged as the case may be. It is desirable to have the beer or other liquid operated on uniformly charged. The device in question is intended to preserve, as nearly as may be, the gas space at an uniform depth, and to accelerate the flow of beer by an increased pressure of gas when for any reason the beer rises above the desired point. Gas is admitted under pressure. The supply of gas is regulated by the rising and falling or ascent and descent of the regulating vessel, V, which operates the gas valve and controls the admission of gas. The regulating ves-

sel, V, having free communication with both beer and gas in the vessel, A, the beer level in both is always the same. If having been set at a given point or level, the beer level in A rises, the beer level in V rises, and it contains more beer, and as it is to be carried upwards by the rise of beer in A it opens the gas valve and admits a greater pressure of gas, and this pressure tends to accelerate the flow of beer from A and lower its level. The regulating vessel, V, being in plain view, the person drawing off the charged beer is able at all times to know whether the liquid is being uniformly charged. It cannot be denied that, very broadly speaking, such an apparatus was old, and that the patent in suit was concerned with the means for securing uniformity of carbonating; that is, uniformity of absorption of gas. It is conceded that uniformity in carbonating the beer, or other liquid, is an essential of a commercially successful apparatus. The alleged invention is based on the principle that the degree of absorption is, in the main, dependent upon the height of the atmosphere of gas through which the drops of beer fall, and to maintain uniformity of gas space it was necessary to secure a substantially constant level of charged beer or other liquid. As the beer is drawn off into bottles or other receptacles the flow is liable to interruption in which case there is liable to be and will be a change of level of the beer, rising higher up in the vessel containing it. The flow of gas is also continuous. While in operation the pressure under which the gas enters the carbonator is less than that on the beer or other liquid, otherwise the beer may not flow into the carbonator. The means described in this patent are such that variation of the height of the liquid causes the flow of one of the two liquids, beer or gas, entering the carbonator, to be varied to such an extent as to restore the height of the charged liquid, and consequently to restore the height or depth of the atmosphere of gas to the normal.

In view of the prior art I am of the opinion this claim of the patent is valid. Infringement depends on the construction we give claim 3 of the patent in suit. Is it broad and comprehensive enough to cover an apparatus where the inflow of gas is not regulated, but the inflow of beer is, by substantially the same means and combination of elements described in the patent?

In complainant's structure it is contended that the inflow of liquid to be carbonated is unregulated. It may be controlled by shutting off the supply, of course, but, the claim is, that it is not self-regulating in the respect named, except in so far as controlling the inflow of gas tends to regulate or control the outflow of liquid and consequently the inflow of liquid. The contention is that in complainant's structure shown the regulating valve is placed in the gas supply passage, and that in defendant's the regulating valve, controlled by the position of the counterbalanced tank, V, is placed in the liquid supply passage and not the gas supply passage. This seems to be true so far as the drawings show. When the liquid in tank V, of defendant's structure, rises above a certain level it closes the liquid or beer inlet and shuts off the supply of liquid, but when it falls below a certain level it opens the liquid inlet and permits an increased flow. In this way the level of the liquid to be carbonated is maintained automatically at all times and un-

der all conditions. It is obvious that as the beer rises the inflow of gas is checked and that the depth of the atmosphere of gas is diminished, and as the beer lowers the inflow of gas and depth increases. The defendant contends that Theurer, the inventor named in the patent in suit, departing from what everybody had done before and have done since, viz., controlling the inflow of the liquid supply in a closed vessel, put a regulating device in or on the gas supply and left the liquid supply uncontrolled. This regulating device of the gas supply is operated automatically, as stated, by the rise or fall of the beer level. Prof. Main says it is true that the defendant does not in any way "regulate" the inflow of gas by the height of the liquid in the carbonator; that he simply regulates the inflow of liquid. He does not concede that Theurer undertook simply the automatic regulation of the height of the liquid in a closed chamber by varying the pressure of gases in that chamber. He contends that claim 3 covers and was intended to cover, not only a structure having a supply valve in the gas supply pipe, but one having such a valve in the beer or other liquid supply pipe controlled, of course, by the outside counterweighted vessel, V, and that hence defendant infringes the claim. The contention is that the words "fluid supply valve" in claim 3 include and were intended to include both "gas" and the liquid to be carbonated.

Claims 1, 2, and 4 all refer specifically to a "gas supply valve," while claim 3 specifies "fluid supply valve substantially as described." He does specify valves for controlling the admission of the beer into the vessel as well as a valve for controlling the admission of gas which operates automatically as the beer level rises or falls. He does not describe any automatic action of the beer supply valve. He says:

"I do not in this application broadly claim the combination in a carbonic acid charger of a charging vessel with means for automatically operating the valve or valves for the admission of liquid or gas by the variation of the liquid level in the charging vessel, such a combination being claimed in my prior application filed January 24, 1893, serial No. 459,596."

I do not see what particular difference it makes in the operation of the two devices and results obtained, whether we control the inflow of beer automatically or the inflow of gas automatically so long as the one co-operates with the other to do what is desired, viz., maintain the beer at a given level and consequently maintain a given depth or height of gas atmosphere through which the drops of beer or other liquid fall. I think the inventor had this in mind when claim 3 was framed and intended to claim both modes of operation, that is a charging vessel of this description with valve automatically controlling inflow of gas or one with valve automatically controlling the inflow of beer or other liquid. If this was not the purpose of claim 3 it is a substantial repetition, and he left open to others the accomplishment of the same result he attained by substantially the same means, operating in substantially the same way. It was old to control the inflow of liquid into a closed vessel by a valve, or to control the inflow of gas into such a vessel. However, the combination of claim 3 was not old, whether construed as complainant says it may be, or according to defendant's contention. It seems to me that this contention of the complainant is strengthened by the action of the Patent Office. Theurer had two applications

pending. serial No. 459,596. application filed January 21, 1893, now United States letters patent No. 505,239, dated September 19, 1893, and serial No. 479,237, application filed June 30, 1893, about eight months later, now United States letters patent No. 505,240, dated September 19, 1893, the patent in suit. With both applications pending the Commissioner of Patents under date of August 12, 1893, wrote as to the application for the patent now in suit:

"Applicant should draw proper lines in the specifications between this application and his other pending case. No. 459,596. Claims 3 and 4, so far as understood are not divisible from said case, and unless applicant can show them to be restricted to improvements relating to this application he will be required to divide them out. No other objections are made to the allowance of this case."

By referring to the other application and the claims thereof it is seen that they related to a combination in which was specifically mentioned the liquid supply and a valve for controlling same, and also the gas supply and a valve for controlling it, in combination with other elements, of course, and that that application related to a spring supported charging vessel. Thereupon August 4, 1893, the applicant wrote:

"I hereby amend the above-entitled application by adding at the bottom of page 5 as follows: 'I do not in this application broadly claim the combination in a carbonic acid charger of a charging vessel with means for automatically operating the valve or valves for the admission of liquid or gas by the variation of the liquid level in the charging vessel; such a combination being claimed in my prior application filed Jan. 24, 1893, serial No. 459,596.' In the prior application the mode of regulating the valves was made a subject of generic claims, drawn for such regulation by a spring supported charging vessel, while the regulating vessel exterior to the charging vessel forms the subject of the present application. It is evident that under the rules of practice both specific forms could not have been claimed in one application, and for this reason the present application was made. It will be seen that claims 3 and 4 contain combinations of a stationary vessel and an external regulating vessel, and are therefore an essential part of this case not specifically claimed in the prior application."

It seems to me plain that his purpose and understanding was, and that the Patent Office understood, he had a claim (claim 3) covering both the valve controlled gas supply and the valve controlled liquid supply. The disclaimer inserted in the patent in suit indicates this. In complainant's apparatus, when the beer rises to a certain point, the valve in the gas supply pipe is opened to increase the pressure of inflowing gas and increase the outflow of beer until the proper line is reached. In defendant's apparatus, when the beer rises to a certain height, the valve in the beer supply pipe is closed, and no more beer enters until the proper level is reached. The principle of operation of the means for automatically opening and closing these valves is old, and both had the right to use it. The combination of elements in the two structures, aside from the location of the valves, is substantially the same. The serious doubt I have arises from the fact that the patent in suit does not (outside of claim 3 and the disclaimer clause inserted as an amendment) in any way refer to a structure in which the inflow of beer or other liquid (aside from the gas) is automatically controlled by the means specified. But it seems to me that the wording of claim 3, "fluid supply valve," in connection with the disclaimer

175 F.—50

clause, stating what he does not claim, and the words "a regulating valve for the gas," and "gas regulating valve," used in claim 1, and the words "gas regulating valve," used in claim 2, and "gas supply valve," in claim 4, make it plain that "fluid supply valve" includes a structure where the flow of the fluid to be carbonated is controlled by such a valve as is described in connection with the means for operating it. Of course mere intention to make a claim, or to include a certain element in a claim, does not include it. The language must embrace the elements claimed and all of them. But "fluid supply valve" covers one controlling the inflow of beer as much as it does one controlling the inflow of gas.

As to an "abandoned manufacture," it often happens that the owner of a patent covering a structure ceases to make that thing. He may have other and better patents, or he may find it to his advantage for other reasons to cease the manufacture.

## Laches.

The defendant contends that the record shows the real defendant here, the Wittemann Company, has been manufacturing and selling, in large quantities, and has been extensively advertising the carbonator complained of here as an infringement. That the same has been and is known to the trade as the "Wittemann Carbonator." Also, that the complainant has been cognizant of these facts for eight years, and has not alleged or complained or given notice of infringement, or in any way objected. If this is true, the complainant ought not to be permitted to prosecute this suit. While this court approves of readiness to enforce alleged rights and reasonable promptness in so doing, it does not approve of "hungering or thirsting" after litigation. This neither the law nor equity demands. On this subject Mr. J. F. Wittemann testified:

"Q. 18. For how long a period has your company been selling carbonators in principle like that shown in 'Defendant's Exhibit Cut of Wittemann Carbonator' and having a balance tank, 24, in his cut, controlling the beer supply to the carbonator? A. To the best of my recollection this construction has been sold since 1897; first, by Wittemann Bros., and later by the Wittemann Company. Q. 19. Has it been sold by said concerns continuously during that period? A. Yes, sir. Q. 20. For how long a time has such carbonator been publicly advertised for sale by your concern? A. For the same period. Q. 21. How has it been advertised? A. By illustrated circulars and catalogues, and by illustrated advertisements in virtually all the brewing trade journals of the country. Q. 22. Are you acquainted with Joseph Schneible of the Schneible Company? A. Very well indeed. Q. 23. How long, within your own personal knowledge, has Mr. Schneible been acquainted with the fact that your concern was selling such corbonators as shown in 'Defendant's Exhibit Cut of Wittemann Carbonator'? A. With the exact construction as shown by the exhibit, for the last eight years or so, judging by his own admission to me. Another similar construction, identical in its operating principle, he saw in my presence in December, 1896, at the Tossetti Brewery in Chicago. Q. 24. For how long a time, if you know, has Mr. Schneible been engaged in the business of manufacturing or selling beer carbonators? A. My first knowledge of his activity in this line dates back to 1893, I think."

The Joseph Schneible Company, complainant, is a corporation, of which Joseph Schneible is a member. In 1902, he became the owner (individually) of the stock of the Universal Carbonating Company

which company then owned the patent in suit. April 6, 1906, the Universal Carbonating Company assigned this patent to the Joseph Schneible Company, and this suit for infringement was commenced in May, 1906, about one month after it became such owner. Prior to 1902, so far as appears, Joseph Schneible was not in position to control or institute a suit for infringement of this patent. From 1902 to 1906, he must have been. The laches, if any, was in not instituting suit during that four years. If delay in prosecuting patent suits once commenced, is ground for dismissing them on final hearing or refusing to grant relief, the court ought to apply the rule of its own motion and thus dispose of very many patent litigations. For delays in prosecution the defendant has adequate remedy. He may obtain an order limiting the time within which proofs must be taken and closed and throw the responsibility of delay on the courts, or he may himself "sleep" with the complainant When both parties, each having the power to expedite the case, sleep, and sleep tranquilly, they are in pari delicto, and the court will not interfere. I do not think the delay in bringing suit was, under the circumstances, such laches as will justify the denial of the relief demanded. I have carefully examined the prior art and all the evidence in the case, and with some hesitation have arrived at the conclusion that defendant infringes claim 3 of complainant's patent.

There will be a decree accordingly, with costs, and for an accounting.